UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KEITH JOSEPH PREJEAN         CIVIL ACTION NO. 6:15-cv-02435

VERSUS                          MAGISTRATE JUDGE HANNA

U.S. COMMISSIONER,          BY CONSENT OF THE PARTIES
SOCIAL SECURITY
ADMINISTRATION

## MEMORANDUM RULING

Before the Court is an appeal of the Commissioner's finding of non-disability. In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to have this matter resolved by the undersigned Magistrate Judge. (Rec. Doc. 12).  Considering the administrative record, the parties' briefs, and the applicable law, the Commissioner's decision is affirmed.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Keith Joseph Prejean, fully exhausted his administrative remedies prior to filing this action.  The claimant filed an application for disability insurance benefits ("DIB"), alleging disability beginning on January 1, 2012.[1]  His application was denied on July 16, 2013.[2]  The claimant requested a hearing, which

---

[1]       Rec. Doc. 9-1 at 132, 167.

[2]       Rec. Doc. 9-1 at 77.

was held on April 8, 2014 before Administrative Law Judge Monica J. Anderson.[3]
The ALJ issued a decision on August 8, 2014,[4] concluding that the claimant was not
disabled within the meaning of the Social Security Act through the date of the
decision.  The claimant sought review of that decision, but on July 30, 2015, the
Appeals Council denied his request.[5]  Therefore, the ALJ's decision became the final
decision of the Commissioner for the purpose of the court's review pursuant to 42
U.S.C.  §  405(g).   The claimant then filed this action seeking review of the
Commissioner's decision.

### S<small>UMMARY OF</small> P<small>ERTINENT</small> F<small>ACTS</small>

The claimant was born on March 6, 1969.[6]  At the time of the ALJ's decision,
he was forty-five years old.  He has a high school education and vocational training
as a machinist.[7]  He has past relevant work experience as a calibration technician in
an oilfield service company[8] and as a process and finish supervisor and shipping and

---

[3]  The hearing transcript is found at Rec. Doc. 9-1 at 33-67.

[4]  Rec. Doc. 9-1 at 16-27.

[5]  Rec. Doc. 9-1 at 4.

[6]  Rec. Doc. 9-1 at 36, 132.

[7]  Rec. Doc. 9-1 at 37.

[8]  Rec. Doc. 9-1 at 37-38.

receiving supervisor in another oilfield service company.[9]  The record shows that Mr. Prejean worked for V&M Tube Alloy from 1998 until he was laid off 2009[10] because he was missing too much work due to his health conditions.[11]  He then went to work for Tech Service Products, Inc., where he was employed from 2009 to 2012,[12] with his actual last day worked being March 6, 2013.[13]  While employed at Tech Service Products, Mr. Prejean was given "significant scheduling flexibility," and his employer tried "to work with him in whatever way possible."[14]  However, he was "unable to fulfill his duties. . . on a consistent basis," and his employment was terminated.[15]  Mr. Prejean alleges that he has been disabled since January 1, 2012 due to diabetes, diabetic neuropathy, high blood pressure, gastroparesis, diverticulitis, severe constipation, depression, anxiety, and degenerative disc disease.[16]

---

[9]      Rec. Doc. 9-1 at 43.

[10]     Rec. Doc. 9-1 at 149-152.

[11]     Rec. Doc. 9-1 at 41.

[12]     Rec. Doc. 9-1 at 165.

[13]     Rec. Doc. 9-1 at 42.

[14]     Rec. Doc. 9-1 at 165.

[15]     Rec. Doc. 9-1 at 165.

[16]     Rec. Doc. 9-1 at 170.

At the hearing, Mr. Prejean testified that , while he was working for V&M, he began having stomach problems, and his gall bladder was removed.[17]  He explained that, from that point forward, the problems with his digestive system worsened.[18]

On March 15, 2012,[19] Mr. Prejean was seen in the emergency room at University Medical Center ("UMC") in Lafayette, Louisiana.  He complained of gastrointestinal problems since the removal of his gall bladder two years earlier, including constipation, abdominal pain, and nausea.  He denied being in pain, and he denied being dizzy or light-headed.  His blood glucose reading was 440, while a normal reading is 65-99.  He weighed 280 pounds, and his blood pressure was 148/95.  His chief complaint was that he had been out of his medications for five months.

Mr. Prejean was again seen at UMC's emergency room on May 26, 2012.[20]  He complained of bloody stool and abdominal pain that he rated an eight on a scale of one to ten.  He did not complain of dizziness.  He weighed 237.8 pounds, and his blood pressure was 117/79.   A CT scan of his abdomen detected colonic

---

[17]     Rec. Doc. 9-1 at 41.

[18]     Rec. Doc. 9-1 at 41.

[19]     Rec. Doc. 9-1 at 263, 289-292.

[20]     Rec. Doc. 9-1 at 264-265, 268, 282-288.

-4-

diverticulosis without evidence of diverticulitis.   He was diagnosed with diverticulosis and prescribed Reglan and Protonix.

On June 1, 2012, Mr. Prejean was seen at UMC's internal medicine clinic.[21] He weighed 279 pounds, and his blood pressure was 142/91.  He was noted to have diabetes, hypertension, and back pain, and he complained of abdominal pain.  He did not complain of dizziness.  He was referred to the renal clinic and prescribed Reglan and Protonix.

On June 23, 2012, Mr. Prejean was again seen in UMC's emergency room.[22] He weighed 283.8 pounds, and his blood pressure was 156/87.  His blood glucose reading was 222.  His chief complaint was that he had gotten dizzy, fainted, had chest pain, and vomited bile.  He also complained of abdominal pain, which he rated as ten out of ten.  Under medical history, it was noted that he had previously been diagnosed with diverticulosis and gastroparesis.[23]   The physician's impressions were

---

[21]      Rec. Doc. 9-1 at 275-277.

[22]      Rec. Doc. 9-1 at 266-267, 272-273, 278-281.

[23]      "Gastroparesis is a condition in which the spontaneous movement of the muscles (motility) in your stomach does not function normally.  Ordinarily, strong muscular contractions propel food through your digestive tract.  But in gastroparesis, your stomach's motility works poorly or not at all.  This prevents your stomach from emptying properly.  Gastroparesis can interfere with normal digestion, cause nausea and vomiting, and cause problems with blood sugar levels and nutrition."    Mayo Clinic, http://www.mayoclinic.org/ diseases-conditions/ gastroparesis/ basics/definition/con-20023971, last visited Sept. 26, 2016.  "Although gastroparesis doesn't cause diabetes, inconsistent passage of food into the small bowel can cause erratic changes in blood sugar levels, which make diabetes worse. In turn, poor control of blood sugar levels makes gastroparesis

-5-

constipation and gastroparesis.  Chest and abdominal x-rays showed moderate stool compatible with constipation, mild cardiomegaly,[24] degenerative changes to the spine, but no active lung disease.

Mr. Prejean visited UMC's renal clinic on July 9, 2012.  He weighed 289 pounds, his blood pressure was 139/86.  He complained of chronic abdominal pain. His Norvasc was discontinued, and he was started on Lisinopril.  He was diagnosed with Stage III chronic kidney disease and advised to control his blood pressure and blood sugars.

On September 15, 2012, Mr. Prejean had a consultative examination by Dr. Barnabas Fote.[25]  Mr. Prejean told Dr. Fote that he injured his back while playing basketball at the age of eighteen and had experienced back pain ever since, which he described as a constant, nagging, aching pain in his lower back without any radiation. He stated that both of his legs occasionally go numb and that, about once or twice a month, he gets a tingling sensation in his feet.  He explained that he was diagnosed

---

worse."    Mayo  Clinic,  http://www.mayoclinic.org/diseases-conditions/gastroparesis/basics/ complications/con-20023971, last visited Sept. 26, 2016.

[24]    According to the Mayo Clinic's website, cardiomegaly is an enlarged heart, which may be asymptomatic or my cause shortness of breath, abnormal heart rhythm (arrhythmia), or swelling.    Mayo  Clinic,  http://www.mayoclinic.org/diseases-conditions/enlarged-heart/basics/ symptoms/con-20034346, last visited Sept. 28, 2016.

[25]    Rec. Doc. 9-1 at 237-242.

with diabetes and hypertension about sixteen years earlier.  He stated that he takes oral medications and insulin for the diabetes and that his blood sugar is not adequately controlled.  He told Dr. Fote that he was diagnosed with gastroparesis about two years earlier and that he had chronic constipation.  He also reported that he was diagnosed with sleep apnea and used a CPAP machine.  He stated that he took Amitriptyline as necessary to help him sleep.  He denied any mental problems.  He reported that his medications at that time were Actos, Accuretic, Norvasc, Amitriptyline, Lactulose, Humalog, Metoclopramide, and Pantoprazole.  Mr. Prejean told Dr. Fote that he was independent in the majority of his activities but sometimes needs assistance bathing, dressing, using the toilet, and driving a car.  His blood pressure was 142/95, he was 5' 11", and he weighed 285 pounds.  X-rays taken that day indicated that there was a mild loss of lumbar lordosis with associated spondylosis throughout Mr. Prejean's lumbar spine, more significant at L4-5 and L5-S1 with foraminal stenosis and disk space narrowing at the L4-5 and L5-S1 levels. Dr. Fote opined that "[b]ased on the musculoskeletal exam," Mr. Prejean "should be able to sit and stand, pull and push as tolerated. . . [and] should also be able to kneel, crawl, and crouch.  Patient should be able to reach, grasp, handle and finger object. There is no need for assistive device.  Hearing an speech are normal."  Dr. Fote's

assessment did not address Mr. Prejean's gastrointestinal problems but only his musculoskeletal capabilities.

Mr. Prejean returned to the internal medicine clinic at UMC on October 1, 2012.[26]  He weighed 298.8 pounds, and his blood pressure was 133/88.  He denied any pain, and there was no indication of dizziness.  His medical history included diabetes, hypertension, constipation, diverticulitis, gastroparesis, and inverted stomach.  A thyroid study was ordered.

On December 27, 2012, Mr. Prejean was seen in the emergency room at UMC.[27]  He complained of abdominal pain that he rated as 10/10, nausea, and vomiting, and he reported a recent thirty pound weight loss.  However, he weighed 286 pounds, which was actually twelve pounds less than at his previous visit on October 1, 2012.  His blood pressure was only 87/57 but his blood sugar at the time of admission was 741.  He denied being dizzy or light-headed.  He was admitted to the hospital with diagnoses of hyperosmolar nonketotic state (a condition that occurs when blood sugar is not controlled[28]), acute-on-chronic kidney failure, diabetes

---

[26]     Rec. Doc. 9-1 at 259-261.

[27]     Rec. Doc. 9-1 at 244-252.

[28]     American Diabetes Association, http://www.diabetes.org/living-with-diabetes/complications/hyperosmolar-hyperglycemic.html?referrer=https://www.google.com/, last visited Sept. 28, 2016.

mellitus, and gastroparesis.  He was given insulin, saline, Zofran, Reglan, Colace, and Amitriptyline but his hypertension medications were withheld.  The next morning, he was feeling better, and his blurry vision had improved.  He denied any anxiety or depression.  On December 29, his medications were adjusted.  On December 30, his medications were again adjusted, and he was discharged to home with instructions to follow up in the gastrointestinal clinic and also in the renal clinic.  His discharge diagnoses were diabetes mellitus, gastroparesis, chronic kidney disease, and hypertension.

Mr. Prejean followed up at UMC's gastrointestinal clinic on February 18, 2013.[29]  He weighed 292.8 pounds, and his blood pressure was 119/79.  He complained of pain rated as four on a scale of one to ten, but there is no reference of dizziness in the treatment note.  The doctor's impression was chronic constipational gastroparesis.  Multiple medications were prescribed.

On April 2, 2013, Mr. Prejean was seen at UMC's internal medicine clinic.[30] He weighed 292 pounds, and his blood pressure was 158/101.  He denied being in pain, and there is no reference to dizziness.  The conditions addressed were diabetes, erectile dysfunction, hypertension, and gastroparesis.

---

[29]     Rec. Doc. 9-1 at 325-327.

[30]     Rec. Doc. 9-1 at 253-256.

On June 13, 2013,[31] Mr. Prejean had an appointment at UMC's dermatology clinic regarding a mole on his back.  He weighed 287 pounds, and his blood pressure was 189/130.  He denied that he was in pain and reported that he had forgotten to take his blood pressure medication for two days.  He was referred to the surgery clinic.

On June 29, 2013, Mr. Prejean was examined by Dr. Jacques Courseault[32] for another consultative examination.  Mr. Prejean gave a history of diabetes, gastroparesis, diverticulitis, high blood pressure, inverted stomach, depression, anxiety, back problems, diabetic neuropathy, and constipation.  He stated that he had difficulty controlling his blood sugar and stated that his blood glucose levels were commonly in the 200s to 300s.  He described severe constipation requiring the frequent use of laxatives, constant nausea, and vomiting.  He also reported diabetic neuropathy and tingling and numbness in his legs and feet without weakness.  He also told Dr. Courseault that he has occasional achy low back pain that is worse with activity and better with rest.  He described his high blood pressure as difficult to control, but stated that he is compliant with his medications.  He stated that his depression and anxiety are no longer a problem.  Mr. Prejean told Dr. Courseault that he can sit and stand for thirty minutes at a time, can walk for four blocks, does not

---

[31]     Rec. Doc. 9-1 at 319-321.

[32]     Rec. Doc. 9-1 at 294-298.

need an assistive device, does not wear glasses, is right handed, can complete activities of daily living, and can complete home maintenance tasks. Mr. Prejean reported that his medications were Norvasc, Lipitor, Lisinopril, Protonix, Novolin, Lantus, Lactulose, and Milk of Magnesia. He complained of fatigue, a recent change in visual acuity, headaches, heart palpitations, shortness of breath on exertion, indigestion, nausea, vomiting, change in stool caliber, abdominal pain, urinary urgency and frequency, joint pain, and difficulty sleeping. He did not complain of dizziness or light-headedness.

Dr. Courseault found that Mr. Prejean's blood pressure was 156/106 and that he weighed 284 pounds. His bilateral Achilles reflexes were absent. Dr. Courseault opined that Mr. Prejean should be allowed to alternate sitting and standing as needed in order to relieve his low back pain. He also opined that Mr. Prejean is capable of sitting, walking, and/or standing for a full workday, that he can lift and carry objects without limitations, that he can hold a conversation, respond appropriately to questions, and carry out and remember instructions. He found that Mr. Prejean had a normal range of motion in all tested joints. However, Dr. Courseault advised Mr. Prejean to proceed to an emergency room due to his high blood pressure and tachycardia.

-11-

Mr. Prejean followed Dr. Courseault's instructions and went to the emergency room at UMC that same day.[33]  Upon arrival, he weighed 284 pounds, his blood pressure was 137/99, and he complained of a headache.  He reported that his blood sugar readings have been in the 400s to 500s.  He also complained of abdominal pain, stating that he had had this problem for two years.  He rated his pain as a nine out of ten but the physician indicated that he was complaining of mild abdominal pain.  Mr. Prejean denied being dizzy or light-headed, and he denied depression and anxiety.  Mr. Prejean's blood sugar level was tested, and it was 408.  It is not clear from the treatment note whether Mr. Prejean was given any medication before being released.  He was diagnosed with hyperglycemia and constipation.

On August 27, 2013,[34] Mr. Prejean was seen in UMC's surgery clinic with regard to moles on his back.  He weighed 275.2 pounds, his blood pressure was 157/107, and he denied being in pain.  He denied having a headache, and stated that he did not take his blood pressure medication that day.

Mr. Prejean was seen at UMC's internal medicine clinic for follow up on October 14, 2013.[35]  He complained of abdominal pain that he rated as 8.5 on a scale

---

[33]     Rec. Doc. 9-1 at 310-318.

[34]     Rec. Doc. 9-1 at 309.

[35]     Rec. Doc. 9-1 at 306-308.

-12-

of one to ten.  He weighed 267.6 pounds, and his blood pressure was 128/98.  There is no reference to dizziness or light-headedness.  His diabetes and hypertension medications were refilled, and he was prescribed Nexium for gastroesophageal reflux.

Mr. Prejean was again seen at UMC, this time in the emergency room, on March 25, 2014.[36]  Mr. Prejean complained that he had experienced abdominal pain and vomiting for five years and told the physician that he had been off all of his medications for six months.  Diagnostic testing was performed, which revealed that his blood sugar reading was 533.  Abdominal x-rays showed significant fecal retention throughout the colon compatible with constipation.  The doctor's clinical impressions were constipation, uncontrolled hypertension, and uncontrolled diabetes. He was advised to have a colonoscopy.  There is no reference in the treatment notes to dizziness or light-headedness.

At the time of the hearing, Mr. Prejean submitted a list of sixteen medications, including Doc-q-lace, Miralax, Lactulose, and Magnesium Citrate for constipation; Norvasc and Lisinopril for hypertension; Lipitor for cholesterol; Protonix, Metoclopramide, and Pantopraxole for his stomach; Novolin and Lantus solostar for diabetes; Ondansetrom for nausea; Nexium for gastroesophageal reflux disease; Tylenol for pain; and Amitriptyline as a sleep aid.  However, he testified at the

---

[36]     Rec. Doc. 9-1 at 329-341.

-13-

hearing that he could not afford his medications[37] after he stopped working on March 5, 2013,[38] had not taken any insulin for more than a year before the hearing,[39] had stopped testing his blood glucose level because he did not have any medication to treat his diabetes,[40] and had stopped taking prescription medications for his high blood pressure.[41]  In his hearing testimony, he claimed that the only medicine he was then taking were over-the-counter laxatives.[42]  He also testified that he vomits bile upon waking up in the morning, is nauseated throughout the day, and has constant abdominal pain that he rates as 10-plus on a scale of one to ten.[43]  Mr. Prejean testified that he gets dizzy if he bends down.[44]  He said he is scared that he will get dizzy and fall, so he does not feel safe unless someone is with him.[45]  For that reason, he stays in bed most of the time.[46]  When asked why he gets dizzy, Mr. Prejean stated

----

[37]     Rec. Doc. 9-1 at 42, 49, 52.

[38]     Rec. Doc. 9-1 at 52.

[39]     Rec. Doc. 9-1 at 52.

[40]     Rec. Doc. 9-2 at 54.

[41]     Rec. Doc. 9-1 at 52.

[42]     Rec. Doc. 9-2 at 53.

[43]     Rec. Doc. 9-1 at 54.

[44]     Rec. Doc. 9-1 at 47.

[45]     Rec. Doc. 9-1 at 47.

[46]     Rec. Doc. 9-1 at 47.

that he presumes it is because of his diabetes and high blood pressure or because of his gastroparesis.[47]  He stated that he sometimes uses a cane to steady himself when he is dizzy.[48]  He also claimed to have major migraine headaches, diabetic neuropathy in his legs and feet and also in his stomach and intestines, as well as degenerative disc disease in his back.[49]  He stated that, because his bowel movements are so infrequent, he never knows when they will occur.[50]  Mr. Prejean also stated that he has sleep apnea[51] and has had kidney failure in the past.[52]  When asked about why he stopped working, Mr. Prejean explained that he would get dizzy and feel like he was going to pass out and consequently did not feel safe in the workplace.[53]

Mr. Prejean now seeks reversal of the ALJ's denial of disability benefits.

---

[47]     Rec. Doc. 9-1 at 52.

[48]     Rec. Doc. 9-1 at 56.

[49]     Rec. Doc. 9-1 at 47-48.

[50]     Rec. Doc. 9-1 at 50.

[51]     Rec. Doc. 9-1 at 53.

[52]     Rec. Doc. 9-1 at 54.

[53]     Rec. Doc. 9-1 at 45.

## ANALYSIS

### A.   THE STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[54]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[55]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[56]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[57]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the

---

[54]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[55]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[56]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[57]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

evidence or substituting its judgment for that of the Commissioner.[58]  Conflicts in the

evidence and credibility assessments are for the Commissioner to resolve, not the

courts.[59]   Four elements of proof are weighed by the courts in determining if

substantial evidence supports the Commissioner's determination:   (1) objective

medical facts, (2) diagnoses and opinions of treating and examining physicians, (3)

the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

education, and work experience.[60]

## B.   ENTITLEMENT TO BENEFITS

The Disability Insurance Benefit ("DIB") program provides income to

individuals who are forced into involuntary, premature retirement, provided they are

both insured and disabled, regardless of indigence.[61]

The term "disabled" or "disability" means the inability to "engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can

---

[58]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[59]    *Martinez v. Chater*, 64 F.3d at 174.

[60]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[61]    See 42 U.S.C. § 423(a).

be expected to last for a continuous period of not less than twelve months."[62]   A

claimant is determined to be disabled only if his physical or mental impairment or

impairments are so severe that he is unable to not only do his previous work, but

cannot, considering his age, education, and work experience, participate in any other

kind of substantial gainful work that exists in significant numbers in the national

economy, regardless of whether such work exists in the area in which the claimant

lives, whether a specific job vacancy exists, or whether the claimant would be hired

if he applied for work.[63]

## C.   THE EVALUATION PROCESS AND THE BURDEN OF PROOF

The Commissioner uses a sequential five-step inquiry to determine whether a

claimant is disabled.  This process requires the ALJ to determine whether a claimant

(1) is currently working; (2) has a severe impairment; (3) has an impairment listed in

or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is

able to do the kind of work he did in the past; and (5) can perform any other work.[64]

---

[62]      42 U.S.C. § 1382c(a)(3)(A).

[63]      42 U.S.C. § 1382c(a)(3)(B).

[64]      20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

-18-

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[65]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[66] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[67]   The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[68]

The claimant bears the burden of proof on the first four steps.[69]   At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[70]   This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by

---

[65]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[66]     20 C.F.R. § 404.1520(a)(4).

[67]     20 C.F.R. § 404.1545(a)(1).

[68]     20 C.F.R. § 404.1520(e).

[69]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[70]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

expert vocational testimony, or by other similar evidence.[71]   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[72]   If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[73]

## D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since January 1, 2012.[74]   This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: obesity, degenerative disc disease, hypertension, diabetes mellitus, and gastrointestinal problems.[75]   This finding is supported by evidence in the record.

---

[71]      *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[72]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[73]      *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[74]      Rec. Doc. 9-1 at 18.

[75]      Rec. Doc. 9-1 at 18.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[76]  The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform sedentary work, with certain stated exceptions, including the need to alternate sitting and standing as needed.[77]  The claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing his past relevant work.[78]  The claimant does not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from January 1, 2012 (the alleged disability onset date) through August 8, 2014 (the date of the decision) because there are jobs in the national economy that he can perform.[79]  The claimant challenges this finding.

---

[76]      Rec. Doc. 9-1 at 19.

[77]      Rec. Doc. 9-1 at 20.

[78]      Rec. Doc. 9-1 at 25.

[79]      Rec. Doc. 7-1 at 28-29.

E.    **THE CLAIMANT'S ALLEGATIONS OF ERROR**

The claimant argues that the ALJ erred (1) because she improperly evaluated lay evidence from the claimant's former employer; and (2) because she improperly evaluated the claimant's nonexertional limitations.

F.    **THE ALJ PROPERLY EVALUATED LAY WITNESS TESTIMONY**

The claimant argues that the ALJ erred in failing to properly evaluate the statements of J. Brock Dumestre, Jr., the president of Tech Service Products, Inc., Mr. Prejean's former employer.  The regulations explain how the intensity and persistence of symptoms such as pain are to be evaluated in determining whether or how a claimant's symptoms limit his capacity to work.  In particular, an ALJ is required to "carefully consider" evidence from lay sources.[80]  "Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which [the claimant, his] treating or nontreating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account. . . in reaching a conclusion as to whether [a person is] disabled."[81]  Mr. Prejean argues that the ALJ

---

[80]     20 C.F.R. § 404.1529(c)(3).

[81]     20 C.F.R. § 404.1529(c)(3).

failed to comply with this guideline in evaluating the information provided by Mr.

Dumestre.

Mr. Dumestre wrote a letter dated April 3, 2014, addressed "to whom it may

concern."  The letter reads as follows:

> Keith Prejean was a valued employee of Tech Service Products, Inc.  He
> began work with our company in November of 2009.  During the past
> 2-3 years, Mr. Prejean has been unable to fulfill his duties at our
> company on a consistent basis.  As a result, Mr. Prejean's employment
> has been terminated.
>
> Due to Keith's status with our company, we provided him with
> significant scheduling flexibility.  It was our intention to work with him
> in whatever way possible.  Mr. Prejean did his best to resume his duties
> with our company.  Even with this scheduling ability, Mr. Prejean was
> not able to continue his work with our company, which resulted in his
> termination.[82]

The claimant states in his briefing that Tech Service Products terminated his

employment because of excessive absenteeism, and that the ALJ failed to consider

his need for frequent absences as a nonexertional factor in evaluating his residual

functional capacity.  In fact, however, there is no evidence in the record establishing

that Mr. Prejean was terminated by Tech Service Products due to excessive absences.

While Mr. Prejean testified at the hearing that he was terminated from his

employment with V&M (before he went to work for Tech Support Products) for

---

[82]      Rec. Doc. 9-1 at 165.

excessive absenteeism,[83] Mr. Dumestre's letter does not state that excessive absenteeism was the reason that Mr. Prejean's employment with Tech Service Products was terminated. The letter vaguely states only that he was "unable to fulfill his duties. . . on a consistent basis." There could be any number of ways in which an employee might be unable to consistently fulfill his duties. The fact that Mr. Dumestre stated that the company afforded Mr. Prejean scheduling flexibility also fails to establish excessive absenteeism. Scheduling flexibility could have multiple different meanings depending on an employee's particular circumstances. But even if the letter could be interpreted as supporting the argument that Mr. Prejean was excessively absent from work, no reason for such absenteeism was provided by Mr. Dumestre or by Mr. Prejean.

In his hearing testimony, Mr. Prejean stated that he became dizzy at work and because of his dizziness did not feel safe in his workplace environment. That was the only reason he provided for why he could no longer work at Tech Service Products. He did not testify that his gastrointestinal problems required him to be absent from work nor did not he testify that his pain complaints – whether related to his degenerative disc disease, his diabetic neuropathy, or his gastroparesis – was so intense that he could not go to work.

---

[83]    Rec. Doc. 9-1 at 41.

-24-

At the hearing, the vocational expert testified that Mr. Prejean's work at Tech Service Products should be classified as medium work, while his prior job at V&M was properly classified as light work, but such work would be precluded with the restrictions that the ALJ found necessary.

In her ruling, the ALJ summarized Mr. Dumestre's letter and accepted as credible Mr. Dumestre's opinion that Mr. Prejean was not able to fulfill his duties with that company.  It is apparent that the ALJ "carefully considered" the information provided by Mr. Dumestre in accordance with the regulation quoted above.  Then, after carefully considering the letter, the ALJ concluded that although Mr. Prejean was no longer able to fulfill his duties at Tech Service Products, he was capable of working at a lower exertional level.  This Court finds that the ALJ properly evaluated the evidence presented in the form of Mr. Dumestre's letter and reached a conclusion that is supported by substantial evidence in the record.

## G. THE ALJ PROPERLY EVALUATED THE CLAIMANTS NON-EXERTIONAL LIMITATIONS

The claimant's second argument is that the ALJ failed to properly evaluate his non-exertional limitations.  The responsibility for determining a claimant's residual functional capacity belongs to the ALJ.[84]  In making a finding in that regard, the ALJ

---

[84]     *Ripley v. Chater*, 67 F.3d at 557.

must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations.[85]

The claimant argued that he is unable to persist over a forty-hour work week and to maintain consistent, reliable attendance at work due to his chronic constipational gastroparesis.[86]  But there is no evidence that Mr. Prejean lost his job at Tech Service Products due to excessive absenteeism or due to any symptoms or limitations caused by his gastroparesis.  Nowhere in his briefing does Mr. Prejean identify the alleged non-exertional limitations that prevent him from going to work every day or explain how those alleged limitations prevented him from doing his job. Although he stated that his gastroparesis causes constipation and abdominal tenderness,[87] he did not relate those particular symptoms to an inability to perform the tasks that were required of him by his employer over an eight-hour work day or a forty-hour work week.

---

[85]     *Martinez v. Chater*, 64 F.3d at 176.

[86]     Rec. Doc. 14 at 9.

[87]     Rec. Doc. 14 at 10.

At the hearing, Mr. Prejean testified that he stopped working because he got dizzy at work and consequently did not feel safe in the workplace.[88]  He did not offer any other reason why his multiple medical conditions prevented him from continuing to work.  When asked what caused his dizziness, Mr. Prejean testified that he was not sure but assumed that it was caused either by his diabetes, his high blood pressure, or his gastroparesis.[89]

The record contains only one treatment note indicating that Mr. Prejean complained to a physician of dizziness and several treatment notes in which he denied experiencing dizziness or light-headedness.  If dizziness was the primary reason why he felt he could no longer work, it seems that the record would document both more complaints of that condition to his treating physicians and more attempts to seek treatment for that condition.

Mr. Prejean also complained of constant abdominal pain that he rates at greater than ten on a scale of one to ten[90] and stated that he is most comfortable lying in bed.[91]  Despite numerous complaints of pain in the record, however, there is no

---

[88]     Rec. Doc. 9-1 at 45.

[89]     Rec. Doc. 9-1 at 52.

[90]     Rec. Doc. 9-1 at 54.

[91]     Rec. Doc. 9-1 at 47.

indication that Mr. Prejean has ever been given pain medication or been referred to a pain management specialist.  Pain can constitute a disabling impairment,[92] but pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[93]   Mild or moderate pain is not disabling.   Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[94]   While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.[95]   The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[96]   The absence of objective

---

[92]     *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[93]     *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990).

[94]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[95]     *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[96]     *Harper v. Sullivan*, 887 F.2d at 96.

-28-

factors can justify the conclusion that a witness lacks credibility.[97]  In this case,  the severity of Mr. Prejean's pain complaints are not medically corroborated.

Furthermore, the record is replete with instances in which Mr. Prejean failed to take his medication as prescribed.  On March 15, 2012,[98] he reported to a physician at UMC that he had been off all of his medications for five months.  That would mean that, while he was still working for Tech Support Products, he stopped taking his medication.  Hypertension and diabetes are serious conditions, both of which can be life-threatening if left untreated.  Perhaps his symptoms could have been controlled if he had taken his medication as prescribed.  In summary, the medical evidence in the record does not support Mr. Prejean's  claim that he is unable to work due to pain or dizziness.

Furthermore, there is no requirement that an ALJ make a finding regarding the sustainability of employment in all cases.[99]  Such a finding is necessary only if the claimant's "ailment waxes and wanes in its manifestation of disabling symptoms."[100]

---

[97]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d at 1385.

[98]     Rec. Doc. 9-1 at 263, 289-292.

[99]     *Perez v. Barnhart*, 415 F.3d at 465; *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003).

[100]     *Perez v. Barnhart*, 415 F.3d at 465, quoting *Frank v. Barnhart*, 326 F.3d at 619.

Here, there is no allegation that Mr. Prejean's impairments wax and wane; consequently, there was no requirement that the ALJ's ruling include a separate finding concerning the sustainability of employment.

In such cases, including this one, "the claimant's ability to maintain employment is subsumed in the RFC [residual functional capacity] determination."[101] "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time."[102] "[T]he ability of a claimant to perform jobs in the national economy must take into account the actual ability of the claimant to find and hold a job in the real world."[103] This requirement extends to cases involving mental as well as physical impairments.[104] Therefore, the ALJ's finding that Mr. Prejean has the residual functional capacity to perform a modified range of sedentary work must be understood as implicitly incorporating a

---

[101]    *Perez v. Barnhart*, 415 F.3d at 465.

[102]    *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) (emphasis in original).

[103]    *Singletary v. Bowen*, 798 F.2d at 822, quoting *Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984).

[104]    *Watson v. Barnhart*, 288 F.3d 212, 217-18 (5th Cir. 2002).

finding that he is capable of sustaining employment in such a job.  This Court finds that the ALJ did not err in evaluating Mr. Prejean's residual functional capacity.

<u>CONCLUSION</u>

This Court finds that the ALJ properly evaluated the evidence provided by Mr. Prejean's former employer and properly evaluated Mr. Prejean's non-exertional limitations when analyzing his residual functional capacity.  Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED, and this action is dismissed with prejudice.

Signed at Lafayette, Louisiana, on this 3rd day of October 2016.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-31-